UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KEITH MOORE,<br><br>Defendant. | Case No. 25-cr-162 (BAH) |

**OPPOSITION BY THE UNITED STATES TO DEFENDANT'S
APPEAL AND MOTION TO REVOKE DETENTION ORDER**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant Keith Moore's motion to revoke Magistrate Judge Michael G. Harvey's detention order [ECF No. 19] (hereafter, "defendant Moore's motion"), in this matter. As Judge Harvey determined, and for the reasons set forth in his order of detention [ECF No. 18] and detailed below, there is clear and convincing evidence that no conditions, or combinations thereof, will reasonably assure the community's safety, should defendant Moore be released, based on his prior criminal history and history of violence and use of weapons.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Although the full factual background is set forth in the United States' Memorandum in Support of Pretrial Detention [ECF No. 11], which the United States respectfully requests to incorporate here, a summary is also provided here for the Court's convenience. On October 9, 2024, at around 5:50 p.m., Metropolitan Police Department ("MPD") officers saw an illegally parked gray Ford Focus with Virginia tags[1] ("the vehicle"), which was blocking a fire hydrant in

---

[1] Records check indicate that the vehicle was registered to a third person (not the defendant or Ms. Markham).

the 5300 block of Queens Stroll Place SE.  A group of people, who were standing nearby, scattered when law enforcement exited their vehicles to try and identify the owner of the illegally parked car – including the defendant, who was seen walking away from the driver's side area of the vehicle.  A second individual, later identified as Shenay Markham, was seen leaning into the passenger's side of the vehicle before shutting the door and walking away.  One of the officers asked Ms. Markham if she knew whose car it was, and she denied any knowledge before continuing to walk away.

After looking into the driver's side window of the vehicle, one officer almost immediately saw the butt, or handle, of a firearm, which appeared to be partially obscured by a gray rag or cloth.  After seeing the firearm, she alerted the other law enforcement officers to the presence of the firearm.  Figures A – B below show the firearm, which was sitting on the driver's side seat, as it appeared in place and before it was recovered by law enforcement:



*Figure A: photograph of firearm on driver's seat (taken from above / driver's side)*



*Figure B: photograph of firearm before recovery (taken from passenger's side)*

On the passenger seat of the vehicle, law enforcement also recovered a cellphone, which visibly displayed an image of Moore on the lockscreen. The recovered firearm was a loaded Smith and Wesson M&P Shield 9mm, bearing serial number NKH6196, with eight rounds in the magazine. Figure C below includes images of the firearm after processing, along with the ammunition:



*Figure C: Smith and Wesson M&P Shield 9mm and eight rounds of 9mm ammunition*

3

After discovering the firearm, law enforcement detained the defendant, who had been seen at the driver's side of the vehicle, and Ms. Markham, who had been seen at the passenger's side. From Ms. Markham's person, law enforcement recovered a small amount of a white substance that field-tested positive for fentanyl. From the nearby area where the defendant walked (after moving away from the vehicle when law enforcement appeared), law enforcement recovered a plastic bag of a white substance that field-tested positive for cocaine base (and that was later confirmed by laboratory analysis as approximately 5.6 grams of cocaine base). Of note, the bag was not covered with any debris or dirt, consistent with it having been freshly discarded. On scene, the defendant made a number of inconsistent statements, denying any association with the vehicle until the phone with his photograph displayed as the lockscreen image was recovered, at which point he admitted to having ridden in the car.

Although neither the defendant nor Ms. Markham were charged at the time, buccal warrants were obtained from both and submitted for DNA testing and comparison with swabs from the firearm. As shown in Figure D below, DNA testing results for the firearm, which contained male and female DNA interpreted as originating from three individuals, show strong support for the defendant's inclusion and Ms. Markham's exclusion as contributors on the firearm:[2]

| Person of Interest (POI) | Likelihood Ratio (LR)[2] | Level of Support[3] |
|---|---|---|
| MOORE | $5.2 \times 10^{19}$ (52 quintillion) | Very Strong Support for **Inclusion** |

The DNA results from item 1 are 40 times more likely if three unknown, unrelated people are contributors than if MARKHAM and two unknown, unrelated people are contributors.

| Person of Interest (POI) | 1/Likelihood Ratio (1/LR)[2] | Level of Support[3] |
|---|---|---|
| MARKHAM | 40 | Limited Support for **Exclusion** |

*Figure D: excerpt of DNA results for recovered firearm*

---

[2] No DNA or sex typing results were obtained from the magazine; as a result, no comparisons could be made.

4

After DNA results confirmed the defendant's possession of the firearm, the defendant was charged by indictment with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). An arrest warrant was issued on June 4, 2025, which remained outstanding until the defendant's arrest by the United States Marshal Service ("USMS") on August 15, 2025. At the defendant's initial appearance on August 18, 2025 before the Honorable Moxila A. Upadhyaya, the United States sought the defendant's detention pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(E) (felony involving a firearm). The Court set the defendant's detention hearing for August 20, 2025. At the request of defense, the hearing was subsequently continued to August 22, 2025. The hearing was continued once more to August 27, 2025 and, following oral argument, Judge Harvey ordered the defendant detained pending trial.

On September 5, 2025, the defendant appeared for a status hearing before the Honorable Judge Beryl A. Howell. During that status hearing, the Court scheduled a bond hearing for September 10, 2025. On September 8, 2025, the defendant filed his appeal and motion for revocation of the order of detention [ECF No. 19], to which the United States now responds.

In his motion, the defendant primarily relies on the same facts and arguments previously set forth in his Memorandum in Support of Pretrial Release [ECF No. 14], filed on August 21, 2025, and analyzed in Judge Harvey's order of detention. *See* ECF No. 18, pg. 5. Although he asserts that he is not a danger to the community, the United States respectfully disagrees. As Judge Harvey already concluded, all four factors of 18 U.S.C.§ 3142(g) weigh in favor of the defendant's detention to ensure the community's safety.

## II.     LEGAL STANDARD

The Bail Reform Act requires pretrial detention where a court finds "that no condition or

combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §§ 3142(e), (f). In making that determination, a court must consider "(1) the nature and circumstances of the offense charged . . . (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id*. § 3142(g).

The government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community and by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight—even where it is presumed that those standards are satisfied. *See United States v. Thomas*, No. 21-cr-724, 2022 WL 203083 at *2 (D.D.C. Jan. 24, 2022) (Cooper, J.) (citing *United States v. Simpkins*, 826 F.2d94, 96 (D.C. Cir. 1987)).

## **ARGUMENT**

All four 3142(g) factors weigh in favor of the defendant's detention. At the age of 38, the defendant has amassed an extensive and serious criminal history probative of his willingness and capacity to use firearms to endanger others and the community, to inflict physical harm upon others, and to disregard court order and conditions of release. This history appears to span the last 20 years and the defendant's entire adult life. Convictions for serious offenses and prior periods of detention have insufficiently deterred the defendant from criminal conduct, and he previously violated conditions of his prior periods of supervision. In sum, the defendant's history—the best predictor of future conduct—demonstrates that there are no conditions or combinations of conditions to assure the safety of the community.

## I.  Nature and Circumstances of the Offenses Charged

The United States respectfully submits that the nature and circumstances of the offense charged here weigh in favor of detention, given that the circumstances involve the defendant's possession of a loaded firearm out in the community – not in a residence or private location. Although the defendant states that the "government has attempted to exaggerate the circumstances" surrounding the offense [ECF No. 19, pg. 3], the United States has never attempted to bolster the evidence or minimize relevant details. Indeed, the facts cited by the defendant – that the car was not registered to him, that another individual was seen accessing the car, and that he admitted only to riding in the car – are all facts that the United States included in its Memorandum in Support of Pretrial Detention precisely so they could be given due consideration by the magistrate judge. *See* ECF No. 11.

In finding that this factor weighs in favor of detention, Judge Harvey also concluded that "the nature and circumstances of the offense—an individual with prior convictions for offenses involving guns possessing a loaded firearm in a public place—indicate that [d]efendant would be a danger to the community on pretrial release." *See* ECF No. 18, pg. 6 (citing *United States v. Blackson*, 2023 WL 1778194, at *7 (finding that illegal possession of a loaded, concealed firearm "with easy, quick access in the front waistband of defendant's pants, while out in public, poses an inherent risk of danger to the community"); *United States v. Gassaway*, No. 21-cr-550, 2021 WL 4206616, at *3 (D.D.C. Sep. 16, 2021) ("This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public."); *United States v. Howard*, No. 20-mj-181, 2020 WL 5642288, at *3 (D.D.C. Sep. 21, 2020)

("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community")).

To be clear, many cases deal with the danger posed by a person's decision to carry a firearm on their person. Here, the firearm was not on the defendant's person; however, it was not in a bag, in a glove compartment, or anywhere else less readily accessible. The defendant's decision here – to have a firearm at close reach, lying on the driver's seat (at the side of the unlocked car where he was initially seen when law enforcement arrived) – is no less dangerous.

## II.     The Weight of the Evidence

The evidence against the defendant also weighs in favor of detention. He was on supervised release for a violent crime for which he received more than a year of imprisonment and he had previously been convicted in two separate cases of other violent crimes, including Robbery while Armed. As a result, there can be little doubt that the defendant knew he was prohibited from possessing a firearm and ammunition on October 9, 2024. Setting aside the DNA evidence, the nexus between the defendant and the firearm is also strong, given that he was seen by law enforcement at the driver's side of the vehicle (where the gun was recovered) and that he admitted to having been in the vehicle after law enforcement located a phone inside with his photograph as the lockscreen image. Although another individual clearly also had access to the vehicle, the DNA evidence very strongly supports the defendant's inclusion as a contributor to the DNA taken from the firearm (and her exclusion).

Judge Harvey also found that the evidence weighed "slightly" in favor of detention, noting that the case was circumstantial. *See* ECF No. 18, pg. 6. Even after considering the defendant's arguments that the probative value of the DNA was weakened because it originated from a mixture of three individuals and was taken from the firearm's exterior, however, Judge Harvey also noted

that the DNA evidence "nevertheless strongly connects Defendant to the firearm." *Id*. Nor has that calculus now changed.

### III. Defendant's History and Characteristics

The defendant's history and characteristics, perhaps more than any other factor, weighs heavily in support of his detention. His first adult conviction was for Armed Robbery in 2005 FEL 0019. Although the Superior Court docket is less than clear, it appears that he was released pending trial to a halfway house before absconding on September 1, 2005. He was in escape status for months before being apprehended. He was charged with Prisoner Escape in 2006 CF2 18864 and pled guilty in both cases. He then appears to have failed to appear for sentencing on June 1, 2007. He was apprehended again on August 31, 2007 and charged with violating the Bail Reform Act (felony) in 2007 CF2 20554. He was sentenced in all three cases on the same day, receiving 40 months of imprisonment in 2005 FEL 19, one month of imprisonment in 2006 CF2 18864, and one month of imprisonment in 2007 (to be served consecutively). According to the Pretrial Services Agency Report ("PSR") [ECF No. 8], his supervised release was revoked to incarceration on January 31, 2023.

In 2008 CF3 3594, he was charged with Armed Robbery, Possession of a Firearm during a Crime of Violence, Carrying a Pistol without a License Outside the Home, and Unlawful Possession of a Firearm. After a jury trial that resulted in a hung verdict, he pled guilty to four misdemeanors and was subsequently sentenced to 180 days of imprisonment on each count (to be consecutively to one another). Although there does not appear to have been a statement of facts filed in support of the guilty plea, the affidavit in support of the arrest warrant sets forth an incredibly troubling set of facts. *See* ECF No. 11, Exhibit A. According to the affidavit, the defendant committed an armed robbery of a citizen and then committed a *second* armed robbery

9

of a postal worker who witnessed the first robbery and was trying to call the police. According to the PSR, he was released in April 2011. Just two months later, he was arrested again and charged with (and pled guilty to) Armed Robbery in 2011 CF3 11041. The Statement of Facts filed in support of the guilty plea again details troubling facts of the defendant's conduct, including that he put a gun to the head of the victim. *See* ECF No. 11, Exhibit B. He was sentenced on July 17, 2015 and received 72 months of incarceration.

In 2019 CF2 29457, he was convicted of Assault with Significant Bodily Injury and Felony Contempt. According to the police paperwork and Statement of Facts filed in support of his guilty plea, after a fender bender with another individual, the defendant apparently became so enraged that he struck the other party in the face, causing him to drop to the ground and momentarily lose consciousness. *See* ECF No. 11, Exhibit C. Nor does it appear that the presence of law enforcement in the area – close enough to have witnessed the assault and captured it on bodyworn camera – appear to have deterred the defendant from his violent conduct. Then the defendant went even further – while detained pending trial, he contacted the victim from jail, in direct violation of court order, in an apparent attempt to obstruct justice by discouraging him from participating in the court case.

To be clear, the United States is not unsympathetic to the personal circumstances, raised for the first time in court during the September 5, 2025 status hearing and set forth in his appeal [ECF No. 19, pg. 5-6], surrounding his family situation. Nor does the United States take lightly difficulties that the defendant's continued detention might cause (or imposed by the detention of any person). But this must also be viewed against the defendant's twenty-year pattern of violent, assaultive conduct – often involving guns – that also demonstrates a history of failing to comply with the law, court order, and conditions of supervision. As Judge Harvey noted, "courts have

recognized that the danger inherent in a felon possessing a loaded firearm in public is heightened where, as here, the defendant has a history of violence." ECF No. 18, pg. 7.  He has at least twice failed to appear, violated his conditions of supervision, and actually contacted the victim of a violent crime in direct contravention of a court order.  The Court can therefore have no confidence that the defendant will behave any differently if release conditions are imposed in the instant matter in lieu of detention.

### IV.     Danger to the Community

Notwithstanding the very difficult personal circumstances faced by the defendant and his family, the defendant should remain detained due to the danger he poses to the community.  As Judge Harvey also noted, "it is clear to the Court that Defendant represents a danger to the community because of his criminal conduct involving firearms, as well as his disregard for court-imposed release conditions."  Id.  Proposed conditions of release, including home confinement with GPS monitoring, are also insufficient to mitigate his dangerousness.  He appears to have been living in the same residence he would return to at the time of the instant offense and was also on supervision in a separate case, and yet he was still undeterred from possessing the firearm at issue here.

## **CONCLUSION**

Given the assessment of all four relevant factors, no condition or combination of conditions can ensure the safety of the community. The Court should grant government's motion to detain the Defendant pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: */s/ Andrea Duvall*
ANDREA DUVALL
Assistant United States Attorney
District of Columbia
AR Bar No. 2013114
601 D Street, NW
Washington, DC 20530
(202) 252-2408
andrea.duvall@usdoj.gov