## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal Action No. 25-162 (BAH) |
| KEITH MOORE, | Judge Beryl A. Howell |
| Defendant. | |

## MEMORANDUM OPINION

Defendant Keith Moore faces trial on February 23, 2026 on a one-count indictment alleging that, as a prohibited person previously convicted of a crime punishable by imprisonment for a term exceeding one year, he knowingly possessed a semi-automatic firearm with ammunition, on or about October 9, 2024, in Washington, D.C., in violation of 18 U.S.C. § 922(g)(1). *See* Indictment, ECF No. 1.  The parties filed several motions in advance of trial, all of which have been resolved except the government's motion to preclude or limit the cross-examination of six of its police officer witnesses, *see* Motion in *Limine* to Preclude and Limit Cross Examination of Police Witnesses ("Gov't's Mot."), ECF No. 39, which motion defendant opposes in large part, *see* Opp'n to Gov't's Mot. ("Def.'s Opp'n"), ECF No. 54.  For the reasons explained below, the government's motion is granted in part and denied in part.

## I.    BACKGROUND

The factual and procedural background relevant to resolving this remaining pretrial motion is summarized below.

### A.    Factual Background

To support the charge against defendant, the government proffers that, on October 9, 2024, at around 5:50 p.m., Metropolitan Police Department ("MPD") officers were on patrol in the 5300

block of Queens Stroll Place SE, Washington, D.C. when they saw an illegally parked vehicle blocking a fire hydrant. Gov't's Opp'n to Def.'s Mot. Suppress DNA Evidence ("Gov't's Opp'n Suppress") at 2, ECF No. 32. A group of people were standing nearby, and law enforcement exited their vehicles to try and identify the owner of the illegally parked vehicle. *Id.* Law enforcement observed defendant walk away from the driver's side area of the vehicle and enter the side yard of a nearby residence. *Id.* Law enforcement also observed a female, later identified as S.M., open the front passenger door and lean into the vehicle before shutting the door and walking away. *Id.*

One of the officers asked S.M. if she knew whose car it was and she denied any knowledge before walking further down the street. *Id.* Other officers engaged with defendant, asking if he lived at the residence whose yard he had entered. *Id.* He indicated that he did, approached the front porch of the residence, and began pulling and knocking on the door, which appeared locked. As law enforcement spoke with defendant, Officer Nicole Arnone looked into the driver's side window of the vehicle, where she saw the butt of a firearm lying on the driver's seat and partially obscured by a gray cloth or rag. *Id.* at 2. Officer Arnone then alerted the other officers to the presence of the firearm, later determined to be a loaded with eight rounds in the magazine. *Id.* Law enforcement subsequently detained both defendant and S.M. *Id.*

From the front passenger seat of the vehicle, in addition to the firearm, law enforcement recovered a sweatshirt matching defendant's sweatpants and a second cellphone, which bore defendant's photograph displayed as the lockscreen image. *Id.* After law enforcement located these personal items, defendant acknowledged he had been in the vehicle. *Id.* Buccal samples were obtained from both defendant and S.M. *Id.* at 4. Subsequent DNA testing showed strong support for the presence of defendant's DNA on the firearm. *Id.*

On June 4, 2025, defendant was charged by indictment with the crime of felon-in-possession under 18 U.S.C. § 922(g)(1). Indictment, ECF No. 1. The government's theory of the case is constructive, as opposed to actual, possession. Gov't's Mot. Regarding Fed. R. Evid. 404(b) at 10, ECF No. 35. Defendant maintains his innocence and, as already noted, trial is scheduled for February 23, 2026.

### B. Procedural History

To facilitate the timely resolution of evidentiary and trial-related issues, the parties were directed to file and respond to any motions approximately one month prior to trial. *See* Min. Order (Dec. 11, 2025) (directing parties to file any pretrial motions by January 9, 2026, with responses due January 23, 2026, and replies due January 30, 2026). The timeline imposed by the pretrial briefing schedule ensured that motions would be ripe for resolution two weeks before the pretrial conference on February 13, 2026, facilitating the resolution of all pretrial motions before or at the pretrial conference. Parties would then have time to prepare for trial with the benefit of resolution of all pretrial motions, including any motions in limine, with the added benefit of avoiding delays during the jury trial due to evidentiary issues that could have been addressed prior to trial.

The parties filed four of their five pretrial motions generally in accordance with the pretrial briefing schedule, and all four motions were resolved before or at the February 13, 2026 pretrial conference.[1] Resolution of the final pretrial motion, however, has been delayed by insufficient briefing and late filings, requiring supplemental briefing.

---

[1] The pretrial motions already resolved are: (1) defendant's motion to suppress DNA evidence, ECF No. 30, *see* Min. Order (Jan. 16, 2026) (denying defendant's motion to suppress DNA evidence); (2) the government's motion *in limine* regarding testimony of DNA analysts, ECF No. 34; *see* Min. Order (Feb. 5, 2026) (denying government's motion regarding DNA analyst as moot after the government filed notice/motion withdrawing motion, ECF No. 49); (3) the government's motion *in limine* regarding admission of evidence, under Fed. R. Evid. 404(b), ECF No. 35; *see* Min. Order (Feb. 13, 2026) (granting in part and denying in part the government's Rule 404(b) motion); and (4) the government's notice to introduce impeachment evidence, under Fed. R. Evid. 609, ECF No. 36; *see* Min. Order (Feb. 13, 2026) (granting in part and denying in part the government's Rule 609 motion).

Specifically, on January 12, 2026, the government moved to preclude or limit the cross examination of its police officer witnesses with respect to certain pending investigations or sustained findings of misconduct, *see* Gov't's Mot., ECF No. 39, with leave granted to file this motion under seal, *see* Min. Order (Jan. 12, 2026). The government represented that, at trial, it "anticipates calling multiple police officer witnesses from the Metropolitan Police Department, including one or more of the following: Mark Minzak, Brandon Joseph, Nicole Arnone, Augustus Thomas, Jose Alpizar, Kirk Del Po, and Kenyon Hogans." Gov't's Mot. at 1. "As part of satisfying the government's obligations to disclose potential impeachment materials pursuant to *Giglio*," the government had shared with defense counsel reports as to each potential officer witness generated by "the MPD 'Personnel Performance Management System (PPMS),' which documents incidents of alleged and sustained misconduct by individual officers." *Id.* Based on the PPMS reports, the government's motion identified zero pending investigations against the anticipated officer witnesses, and summarized, with copy-and-paste excerpts from the PPMS reports, eleven sustained findings of misconduct that the government sought to preclude defendant from using in cross-examination bearing on witnesses' credibility. *See* Gov't's Mot. at 3-6.

Defendant failed to file a timely response to the government's motion, prompting issuance of an order, on February 6, 2026—over two weeks after defendant's deadline to respond— directing defendant to show cause as to why the government's motion should not be considered conceded. *See* Min. Order (Feb. 6, 2026). Defendant subsequently sought, and was granted, leave to file a belated opposition brief, *see* Def.'s Opp'n, to which the government replied, *see* Gov't's Reply Supp. Mot. ("Gov't's Reply"), ECF No. 57. The government's motion to preclude or limit the cross examination of anticipated officer witnesses thus did not become ripe until February 12, 2026, one day before the pretrial conference.

Not only was briefing significantly delayed, both parties' briefs contained critical deficiencies impeding resolution of the motion. The government's descriptions of the eleven sustained misconducts at issue were copied-and-pasted excerpts from the PPMS reports and difficult to understand or to evaluate, under Federal Rules of Evidence 404 and 608, without additional context. *See* Gov't's Mot. at 3-6. Defendant, in turn, provided generic arguments in favor of blanket admission of all eleven sustained findings of misconduct, with little analysis apart from two paragraphs, *see* Def.'s Opp'n at 6, as to why each specific incident should be admitted on cross-examination of the police witnesses for impeachment and to show bias. Yet, given the abbreviated nature of the PPMS excerpts provided by the government, defendant's ability to present more fulsome arguments was inherently limited.

Colloquy at the pretrial conference made clear that the government had not provided defense counsel with the source materials underlying the PPMS reports until the day before the conference. Rough Transcript of Pretrial Conf. (Feb. 13, 2026) at 69:14-15. The government's inability to articulate clearly the facts underlying the sustained findings of misconduct, and defendant's resultant inability to explain which specific incidents he wished to use during cross-examination and on what grounds, necessitated yet *another* order for supplemental briefing. *See* Min. Order (Feb. 13, 2026).[2] The order also directed the government to either justify the continued

---

[2]    The order directed defendant, by 4:00 p.m. on Tuesday, February 17, 2026, "to submit supplemental briefing regarding: (i) whether the defense wishes to cross-examine the government's police officer witnesses about any *unsustained* allegations and, if so, which ones and on what grounds; (ii) whether the defense intends to cross-examine the government's witnesses on *sustained* allegations as to preventable vehicle accidents, bodycam policy violations, training or court no shows, lost MPD property, and uses of force; (iii) whether the defense intends to cross-examine any of the government's witnesses on *pending* allegations and, if so, the scope of the questioning; (iv) the defense's position on *each* specific incident for the six witnesses detailed in the government's [39] SEALED Motion; and (v) the extrinsic information defendant may seek to admit, *see* 54 Def.'s Opp'n at 7, despite Rule 608(b)'s prohibition on the use of extrinsic evidence"; and it also directed the government, by 4:00 p.m. on Wednesday, February 18, 2026, "to (i) submit a response to defendant's supplemental brief detailing its position; and (ii) either provide a justification for sealing the filings associated with the government's [39] SEALED Motion or notify the court that the filings may be unsealed." Min. Order (Feb. 13, 2026) (emphases in original).

sealing of the filings related to the government's motion or notify the Court that the filings may be unsealed. *Id.*

The supplemental briefing and additional time to defendant to review the underlying source materials resulted in more complete information as to pending investigations against some of the officers and some changes to the descriptions of the eleven sustained incidents in dispute, resulting in concomitant changes in defendant's positions as to some of the sustained incidents. *See* ECF Nos. 59, 61. The government also filed a notice agreeing to unseal prior filings and to file future documents related to the motion publicly. *See* Notice to Withdraw Government's Motion to Seal Previously-Filed Motion *in Limine* to Preclude Cross Examination of Police Witnesses and Reply in Support, ECF No. 58.

Now, after adequate briefing based on sufficient descriptions of the evidence the government seeks to exclude, the following issues remain: whether defendant may (1) cross-examine officers as to six pending investigations, Def.'s Supp. Resp. to Gov't Mot. ("Def.'s Supp. Br.") at 2-3; (2) cross-examine officers as to four sustained violations, *id.* at 4-8; and (3) introduce extrinsic evidence "to show the extent of a witness' bias," *id.* at 8. The government's motion is finally ripe for review.

## II.    LEGAL STANDARD

### A.    The Sixth Amendment Confrontation Clause

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. Amend. VI. The Clause demands that a defendant have a "realistic opportunity to ferret out a potential source of bias." *United States v. Wilson*, 605 F.3d 985, 1003 (D.C. Cir. 2010) (citation omitted). A defendant's right to conduct cross-examination, however, does not guarantee unfettered "cross-examination that is effective in whatever way, and to whatever extent,

the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (citation omitted); *United States v. Hall*, 613 F.3d 249, 255 (D.C. Cir. 2010) ("This Sixth Amendment right, however, does not require a trial court to permit unlimited cross-examination by defense counsel, but rather requires the court to give a defendant a realistic opportunity to ferret out a potential source of bias." (internal quotation marks omitted)).    The guarantees of the Sixth Amendment may be accommodated while the district court "has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses." *United States v. Whitmore*, 359 F.3d 609, 615-16 (D.C. Cir. 2004).

A Sixth Amendment violation occurs if a court impairs defense counsel's ability to show credibility or bias on the part of the witness, *see United States v. Abel*, 469 U.S. 45, 48 (1984), "such that a reasonable jury might have received a significantly different impression of the witness's credibility had defense counsel been permitted to pursue his proposed line of cross-examination," *United States v. Webster*, 102 F.4th 471, 485 (D.C. Cir. 2024) (internal quotation marks omitted); *see also United States v. Tucker*, 12 F.4th 804, 822 (D.C. Cir. 2021) (noting defendants are "permitted, as a matter of right, a certain threshold level of cross-examination" and "[t]hat threshold is satisfied so long as defense counsel is able to elicit enough information to allow a discriminating appraisal of a witness's motives and bias" (citation omitted)).    "[N]o violation occurs when the district court blocks 'only marginally relevant' questioning unlikely to move the jury," *Webster*, 102 F.4th at 485 (quoting *United States v. Davis*, 127 F.3d 68, 71 (D.C. Cir. 1997)), "or when the district court imposes 'reasonable limits' meant to curtail ills like 'harassment, prejudice, confusion of the issues, or the witness's safety,'" *id.* (alterations omitted) (quoting *United States v. Derr*, 990 F.2d 1330, 1334 (D.C. Cir. 1993)).

B.      **Federal Rule of Evidence 608(b)**

Federal Rule of Evidence 608(b) provides that "the court may, on cross-examination, allow [specific instances of a witness's conduct] to be inquired into if they are probative of the character for truthfulness or untruthfulness of [] the witness."  Fed. R. Evid. 608(b). Thus, any cross-examination "must be probative of the witness's character for truthfulness."  *Whitmore*, 359 F.3d at 618.  Generally, a bad act must involve some element of deceit, fraud, or falsification to be probative under Rule 608(b).  *See Wilson*, 605 F.3d at 1013; *see also* Fed. R. Evid. 608 Advisory Comm. Notes ("[T]the inquiry is strictly limited to character for veracity, rather than allowing evidence as to character generally. The result is to sharpen relevancy, to reduce surprise, waste of time, and confusion, and to make the lot of the witness somewhat less unattractive.").

Attacks on a witness's credibility under Rule 608(b) may not be supported by the admission of "extrinsic evidence" as proof "when the *sole* reason for proffering that evidence is to attack or support the witness' character for truthfulness."   Fed. R. Evid. 608(b) Advisory Comm. Notes, 2003 Amendments (emphasis added) (citing *Abel*, 469 U.S. 45; *United States v. Fusco*, 748 F.2d 996 (5th Cir. 1984)).  The bar on using extrinsic evidence as proof of truthfulness or lack thereof, however, does not operate to block "extrinsic evidence offered for other grounds of impeachment (such as contradiction, prior inconsistent statement, bias and mental capacity) to Rules 402 and 403."  *Id*. (citing, *inter alia*, "*United States v. Tarantino*, 846 F.2d 1384 (D.C. Cir. 1988) (admissibility of extrinsic evidence offered to contradict a witness is governed by Rules 402 and 403)"; "*United States v. Lindemann*, 85 F.3d 1232 (7th Cir. 1996) (admissibility of extrinsic evidence of bias is governed by Rules 402 and 403)"); *see also United States v. Mahdi*, 598 F.3d 883, 893 n.11 (D.C. Cir. 2010) (noting that Rule 608(b)'s bar on impeachment by extrinsic evidence is not applicable when such evidence is "offered for other grounds of impeachment, such

as contradiction" (internal quotation marks and alteration omitted) (quoting *United States v. Fonseca*, 435 F.3d 369, 375 (D.C. Cir. 2006))).

Finally, even if an instance of past misconduct relates in some way to trustworthiness, such evidence may still be excluded under Federal Rule of Evidence 403, which permits a trial court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "The Rule 403 balancing of probative value versus prejudicial effect is an integral step toward a determination of admissibility under . . . Rule 608(b)." *United States v. Alston*, 626 F.3d 397, 404 (8th Cir. 2010) (citation omitted); *see also Wilson*, 605 F.3d at 1006 ("Even assuming information about the subject matter of the investigation was probative of bias, the district court would properly have excluded cross-examination pursuant to Rule 403 . . . .'" (quoting FED. R. EVID. 403)).

## III. DISCUSSION

The government seeks to preclude or limit cross-examination of six MPD officer witnesses as to certain pending investigations and sustained findings of misconduct. Gov't's Mot. at 3-6. Defendant contends that cross-examination about the incidents is probative of truthfulness and thus permissible under Rule 608(b), and also probative of bias or motive to lie. Def.'s Opp'n at 4-6. The pending investigations and each sustained finding of misconduct will be discussed with respect to each anticipated police officer witness.

### A. PENDING INVESTIGATIONS

At the pretrial conference, the government conceded that limited cross examination of police witnesses as to any open investigation pending against them was "fair game for bias cross." Rough Transcript of Pretrial Conf. (Feb. 13, 2026) at 98:21. The government reiterated this position in supplemental briefing, indicating that, to the extent an officer has a pending

investigation against him, "defendant may ask if the witness is aware of a pending investigation . . . under a motive to curry favor theory."  Gov't's Supp. at 1, 3-4.  Defendant seeks to cross-examine four officers as to their pending investigations or lawsuits: Officers Mark Minzak, Brandon Joseph, Augustus Thomas, and Kirk Del Po.  Def.'s Supp. at 2-3.  The pending investigation identified by defendant against Officer Joseph appears to be "canceled" or "closed," however.  Gov't's Supp. at 2.[3]  "[C]losed internal investigations . . . generally are not relevant to show bias."  *United States v. Dorn*, No. 05-cr-13, 2006 U.S. Dist. LEXIS 102044, at *12 (D.D.C. March 2, 2006).  Thus, any cross-examination as to pending investigations will be limited to three MPD officers: Officers Minzak, Thomas, and Del Po.

As a general matter, the *general* existence of a pending investigation against a government witness can be probative of "motivat[ion] to testify falsely against [defendant] in order to curry favor with the government."  *Wilson*, 605 F.3d at 1006; *see also United States v. Moore*, 589 F. Supp. 3d 87, 91 (D.D.C. 2022) ("[I]t is undisputed that Defendants may cross-examine the witnesses about their personal knowledge of the ongoing . . . investigation . . . and its potential impact on their testimony."); *Youssef v. Lynch*, No. 11-cv-1362, 2016 WL 183504, at *5 (D.D.C. Jan. 14, 2016) (noting that "the mere fact of the existence of the investigation may, in some circumstances, assist in portraying a testifying witness as biased" (internal quotation marks omitted)).

---

[3]    Defendant suggests the existence of "[a]n ongoing investigation regarding a class action civil lawsuit, filed in 2020" in this Court, as to Officer Del Po, Def.'s Supp. at 3, but, as defendant concedes, this officer was not a party named in the civil lawsuit, *id*. n.1, which was settled and dismissed with prejudice, Gov't's Supp. at 4. The government is silent as to whether defendant is correct as to "an ongoing investigation" related to claims in the civil lawsuit and, if this information is correct, the government is also silent as to which police witnesses are subject to the investigation. To the extent that defendant confirms that this assertion is correct, defendant may inquire about it on cross-examination but only as to police officer witnesses who are subject to the investigation—and that does not appear to include Officer Del Po.

The *specific* facts underlying unsubstantiated allegations in pending investigations, however, have minimal probative value.  S*ee Wilson*, 605 F.3d at 1005 (stating that using "the subject matter of [an] investigation" as impeachment evidence under Rule 608(b) is "improper," because "[w]ithout additional evidence of wrongdoing beyond bald assertions [], impeachment would have been based on unproven allegations"); *see also United States v. Clanton*, 769 F. Supp. 3d 147, 155 (E.D.N.Y. 2024) ("Regarding any pending investigations the government has identified, where such allegations are not substantiated, any probative value of the alleged conduct is outweighed by prejudice, and Rule 403 appropriately precludes cross-examination of the pending investigations.").  Consequently, the government seeks to limit defendant's cross-examination to the witness's knowledge of the ongoing investigation and its potential consequences.  *See, e.g.*, *id.* at 2 ("Details of the [allegations] and unsubstantiated complaint should be barred as it fails to further any possible theory of bias.").  The government's proposal is sensible.

Consistent with limiting principles as to relevance and probative value of cross-examinations about pending investigations, defendant's cross-examination of the officer witnesses in this case concerning any open investigation will be limited to the following areas: "(1) the witness's knowledge of the ongoing investigation; (2) whether the witness believes that [he] is a subject of the investigation; and (3) the potential penalty the witness believes [he] could face as a result of such investigation, either criminally or related to employment."  *Moore*, 589 F. Supp. 3d at 92 (JEB) (citing *United States v. Calloway*, No. 20-53, ECF Nos. 78 (Gov't's Motion in Limine) at 10-11; 89 (Transcript of Motions Hearing) at 55-57 (RCL)).

## B.    SUSTAINED FINDINGS OF MISCONDUCT

Four of the anticipated police witnesses have sustained findings of misconduct that defendant seeks to use on cross examination: Officers Mark Minzak, Brandon Joseph, Nicole Arnone, and Lieutenant Hogans.[4]  Each witness is discussed seriatim.[5]

### i.    *Officer Mark Minzak*

#### a.    *Incident #23001770: Improper Access of Arrest Report*

On May 10, 2023, Officer Mark Minzak "accessed the arrest/offense report of an MPD member who was arrested but 'presumably had no legitimate law enforcement reason to do so,'" Gov't's Mot. at 3 (quoting PPMS), in violation of departmental policy prohibiting access to those records for personal use or inquiries, Def.'s Supp. at 4.  The officer accessed the arrest report "from his own account that he was authorized to use and *admitted* to MPD that he accessed it," Gov't's Supp. at 5 (emphasis in original), "out of curiosity because he knew the officer," Govt's Reply at

---

[4]    Defendant was directed to include in his supplemental brief a response addressing whether he intends to cross-examine the government's anticipated MPD witnesses about sustained allegations as to preventable vehicle accidents, body camera policy violations, training or court no shows, lost MPD property, and uses of force, *see* Min. Order (Feb. 13, 2026), in light of the government's motion seeking their exclusion, *see* Gov't's Mot. at 2.  Defendant did not address these types of incidents at all and thus is assumed to have conceded to their exclusion.

[5]    Defendant originally also argued for the admission of sustained findings as to two additional anticipated MPD officer witnesses: Officer Augustus Thomas and Officer Kirk Del Po.  Officer Thomas had one sustained finding (Incident #19000797), when he failed to "identify all victims, witnesses and suspects" involved in a civilian complaint to the police, Gov't's Mot. at 5, in violation of a general order, by not obtaining the identity of one of two females accused by the complainant of damaging a vehicle, but "no finding of dishonesty, false reporting, or misrepresentation was sustained," Gov't's Reply at 10.  Officer Del Po sustained two disciplinary violations (Incidents #16000081, #15000504) for "working more than 18 hours in a 24-hour period, without 'reasonable justification,'" contrary to department policy, with an explanation from the officer that "he had mistakenly calculated his work hours" thinking one of the shifts at issue "was within the start of a new 24-hour period," and an "audit confirmed that Investigator Del Po had actually worked the hours in question."  Gov't's Reply at 11.  Defendant has since affirmed that he will not use these incidents during cross-examination of the two officers.  Def.'s Supp. at 7.  Defendant's judgment that these incidents have little probative value as to truthfulness is likely correct, since, as to Officer Thomas, a service-related error reflecting a "deficiency in investigative thoroughness does not bear on a witness's character for truthfulness under Rule 608(b), Gov't's Reply at 10, and, as to Officer Del Po, the sustained policy violation "concerning work-hour limits," absent a showing of deceit, fraud, or falsification, also does not bear on truthfulness, *id*. at 11.  Accordingly, the government's motion to preclude cross examination of Officer Thomas about Incident #19000797 and of Officer Del Po about Incidents #16000081 and #15000504 is **GRANTED**.

n.3. This incident resulted in the filing of a dereliction report against Officer Minzak.  Gov't's Mot. at 3; Def.'s Supp. at 4.

Defendant seeks to cross-examine Officer Minzak about this incident, arguing that "[s]urrepetitiously accessing a restricted records program for personal reasons, to wit, obtaining restricted reports regarding a colleague accused of Driving Under the Influence, is at its implicit core an act of dishonesty" that "violate[s] the trust and authority of the department to access restricted records."  Def.'s Supp. at 4.  Defendant notes that the incident "happened less than 18 months from the time that Officer Minzak was involved in the arrest of Mr. Moore."  *Id.*  Defendant's arguments are unpersuasive.

It cannot be gainsaid that "not every instance of officer misconduct is 'probative' of an officer's 'character for truthfulness or untruthfulness.'"  *United States v. Harris*, 551 F. App'x 699, 705-06 (4th Cir. 2014) (quoting FED. R. EVID. 608(b)).  "Rather, the Rule authorizes inquiry only into instances of misconduct akin to 'perjury, fraud, swindling, forgery, bribery, and embezzlement.'"  *Id.* (quoting *United States v. Leake*, 642 F.2d 715, 718 (4th Cir. 1981)).  General police misconduct unrelated to a witness's character for truthfulness falls outside Rule 608(b)'s scope.  *See United States v. Alston*, 626 F.3d 397, 404 (8th Cir. 2010) (affirming district court's exclusion of past conduct that an officer engaged "in ridiculing or taunting a prisoner" due, in part, to the danger of prejudice from introducing "sanctions completely unrelated to the witness'[s] character for truthfulness"); *United States v. Seymour*, 472 F.3d 969, 970 (7th Cir. 2007) (stating that an officer's use of excessive force "was not probative of his truthfulness").

For example, in *Glaze v. Childs*, the district court denied defense counsel's request to cross-examine an officer witness under Rule 608(b) about an incident where the officer resigned after being accused of passing a cigarette to an inmate against institutional policy.  861 F.3d 724, 726

(8th Cir. 2017). On appeal, the Eighth Circuit affirmed, reasoning that the conduct "did not involve deceit or fraud"; "[t]here was no claim that Childs lied about passing cigarettes, only that he violated policy by doing so." *Id.* The proffered evidence, the circuit thus concluded, lacked any probative value as to the officer's character for untruthfulness. *Id.*

Similarly, here, nothing about improperly accessing the arrest record of a colleague relates to the officer's character for truthfulness. After all, no allegation is presented that Officer Minzak lied about accessing the reports, only that he violated institutional policy by doing so. The fact that Officer Minzak violated an institutional policy, without any additional departmental finding related to truthfulness or mention of dishonesty, is minimally probative under Rule 608(b) as to the officer's credibility, regardless of how recent the incident occurred. For that reason, inquiries into the incident would also needlessly prolong the hearing and waste time, further supporting exclusion of the evidence under Rule 403.

The government's motion to preclude cross examination of Officer Minzak about Incident #23001770 is therefore **GRANTED**.

### ii. *Officer Brandon Joseph*

#### a. *Incident #22004256: Improper Warrantless Search*

On September 19, 2022, Officer Brandon Joseph and "other members of the unit participated in a 'warrantless search' of a residence without obtaining valid consent" in violation of the Fourth Amendment. Gov't Reply at 4. Specifically, an MPD investigation found that Officer Joseph "failed to obtain a search warrant while conducting a search of [a] residence located in Southeast, D.C." *Id.* The MPD members participating in the warrantless search, including Officer Joseph, "failed to verify the name, address and contact information for the lease holder, failed to stop and obtain a search warrant or a Consent to Search from the occupant/lease holder

and failed to document all involved persons who were contacted and stopped in the police report."
*Id.* "Officer Joseph provided a statement in response to the investigation and stated that he believed there to be exigent circumstances and that the apartment was a vacant [sic] used as a possible 'trap house' based on the amount of trash outside, and an individual abruptly exiting the residence prior to officers' discovery of a 30-round assault rifle magazine near that exit." *Id.*

Defendant reads the source materials as indicating that MPD's Internal Affairs Division discovered "numerous instances of Officer Joseph seizing firearms and contraband and 'without the proper consent or a search warrant,'" Def.'s Supp. at 4, whereas the government contends the source documents "make clear that this occurred one time," namely, on September 19, 2022, Gov't's Supp. at 5. In any event, the parties agree that on September 20, 2023, Officer Joseph received a 10-day suspension. *Id.*; Def.'s Supp. at 5.

Defendant contends that this incident "bear[s] directly on truthfulness in that Officer Joseph demonstrated a repeated willingness to violate citizens' constitutional rights, with the act of failing to report unlawfully seized contraband and firearms through filing arrest reports the primary act evincing a character of untruthfulness." Def.'s Supp. at 5. According to defendant, Officer "Joseph's repeated refusal to make proper arrests and go through the legal channels over a months-long period demonstrates an intent to 'cover up' his repeated constitutional violations, itself an act of dishonesty." *Id.* Defendant's argument appears predicated on a misunderstanding of underlying, albeit evolving, facts as to this single—not "repeated" or "months-long period"—incident of a warrantless search, which Officer Joseph explained he perceived as presenting exigent circumstances, and otherwise falls short.

An officer's failure to conduct a lawful search should certainly not be condoned but nonetheless, in the context of this specific incident, has little relation to the officer's veracity. A failure to obtain a search warrant reflects an issue of judgment regarding warrant requirements,

not a character for untruthfulness. Rule 608(b) therefore precludes the use of this incident during cross-examination. Further, under Rule 403, the danger of confusion to the jury and unfair prejudice to the witness in admitting the details of this incident is high. The recovered firearm and other evidence potentially linking defendant to the firearm were the fruits of a police search. Yet no unresolved Fourth Amendment issues remain to be resolved at trial. *See* Min. Order (Jan. 16, 2026) (denying defendant's suppression motion). Inquiries into a prior unlawful search by Officer Joseph, however, may confuse the jury about the contested elements in this case.

Accordingly, the government's motion to preclude cross examination of Officer Joseph about Incident #22004256 is **GRANTED**.[6]

### iii. *Officer Nicole Arnone*

#### a. *Incident # 24004446: Failure to Ensure Accuracy of Report*

In 2025, MPD's Internal Affairs Division sustained a finding that Officer Nicole Arnone violated general orders requiring officers to ensure the accuracy of reports before submission.

---

[6] In the initial opposition, defendant also argued for admission of three other sustained findings against Officer Joseph: (1) Incident #15002405, concerning a "fail[ure] to sign out from the Court Liaison Division [] until at least two hours after the relevant case was disposed of," accompanied by an explicit finding that the violation was "an honest mistake" as "[t]here appear[ed] to be no intent by Officer Joseph to receive any additional compensation past the hours he attended court," Gov't's Mot. at 7; (2) Incident #15002710, concerning a failure to issue a warning or ticket to a driver, *id*. at 4; and (3) Incident #11003294, concerning a "failure to fill out paperwork regarding the stop and frisk," *id.* Subsequently, with more fulsome descriptions of the incidents provided by the government, defendant now "affirms he will not explore th[ese] incident[s] during cross-examination," Def.'s Supp. at 5-6, and for good reason. None of these three incidents has any bearing on Officer Joseph's character for truthfulness. As many courts have found, an officer's "violations of department policies involving paperwork and other administrative tasks"—where "the reports made no adverse findings against the officers and no credibility determinations"—rarely call into question an officer's credibility. *United States v. Daniels*, 566 F. Supp. 3d 191, 196 (E.D.N.Y. 2021) (precluding cross-examination about, *inter alia*, violations related to incomplete or improperly submitted reports); *United States v. Johnson*, No. 21-1322, 2022 WL 866284, at *2 (3d Cir. Mar. 23, 2022) (affirming denial of request to cross-examine officer's "fail[ure] to notify his superiors that he attended court proceedings where he was not a necessary witness" and receiving "unauthorized overtime for attending those proceedings," as "it was unclear whether this infraction was an intentional violation of police directives and whether the infraction involved a lack of truthfulness" (internal quotation marks omitted)); *United States v. Agoro*, No. 20-cr-293, 2024 WL 1374833, at *22 (E.D.N.Y. Apr. 1, 2024) (finding that "offenses regarding incomplete memo books, failing to properly voucher or safeguard a prisoner's property, creating slightly inaccurate property vouchers, losing Department equipment, and failing to timely notify [one's] bureau of [a] lost department radio are not probative of truthfulness"). Accordingly, the government's motion to preclude cross examination of Officer Joseph about Incidents #15002405, #15002710, and #11003294 is **GRANTED**.

Gov't's Reply at 9.  Specifically, the investigation determined that she "copied and pasted" the factual narrative written by another officer—the Gerstein (i.e., sworn) affiant in that case—into an unsworn arrest report without reviewing it prior to submission.  Gov't's Supp. at 7.

The probative value of this incident under Rule 608 is a closer call, but tips in favor of admission.  As defendant observes, Officer Arnone "presented a report to other investigators and prosecutors bearing her signature that included inaccurate information she failed to independently verify."  Def.'s Supp. at 6.  The government, on the other hand, overstates in contending that Officer Arnone's "role as the Gerstein officer in the instant case bears *no* relevance to this sustained finding" as "no portion of the investigation . . . suggests Officer Arnone acted dishonestly."  *Id.* (emphasis added).  Even absent an express finding of dishonest behavior, Officer Arnone's failure to verify the veracity of an arrest report before submission rises above what the government deems a mere "documentation error."  Gov't's Reply at 9.  MPD officers and prosecutors rely on these reports "to properly prepare cases and make decisions on whether to charge individuals accused of criminal wrongdoing." Def.'s Supp. at 6.  While failures to verify information written in unsworn reports may have lower probative value than similar failures in sworn reports, the fact that Officer Arnone submitted an unsworn report without properly verifying its contents nevertheless bears relevancy to her credibility in the instant matter as the sworn affiant in the Gerstein report.

Accordingly, the government's motion to preclude cross examination of Officer Arnone about Incident # 24004446 is **DENIED**.

###### iv.    *Lieutenant Kenyon Hogans*

###### a.    *Incident # 24004446: Neglectful in Supervisory Duties*

In an investigation "closed and disposed of on May 7, 2025," MPD's Internal Affairs Division sustained a finding that Lieutenant Kenyon Hogans "was 'neglectful in his duties as a supervisor' for failing to ensure that members of his unit complied with departmental policies by allowing members to release prisoner's property on the scene of an arrest to another citizen." Gov't's Reply at 12.  Lieutenant Hogans "admitted that he was aware of a practice by which [his Unit] members released prisoner's property on the scene of an arrest to another citizen."  Gov't's Mot. at 6.

Defendant argues that this incident "bears particular relevance to Hogans' truthfulness in the instant matter," claiming "officers are shown on body camera providing property that could constitute exculpatory evidence to other people who were present at the scene of Mr. Moore's arrest."  Def.'s Supp. at 7.  In addition, defendant notes that "[t]his violation occurred just two months before the events at bar," which occurred on October 9, 2024.  *Id.*  In defendant's view, he "should be allowed to inquire as to Hogans' motivations in allowing his officers to routinely remove possible evidence from crime scenes to third party individuals, particularly when that evidence could be exculpatory to those ultimately arrested."  *Id.*

Defendant speculates that the property released and subject to the investigation could have been potentially exculpatory evidence, yet offers no explanation as to what released property could have been exculpatory and why.  The same holds true in the instant case, where police initially arrested two individuals on October 9, 2024: (1) defendant, and (2) a woman with the initials "S.M."  "At the Defendant's request, the personal property [recovered on defendant's person] was released to his child's mother ('K'), who arrived on scene after his arrest."  Gov't's Opp'n Suppress

at 3 n.4.  Likewise, at the time of her arrest, S.M. was holding a cellphone belonging to an "elderly male" standing beside her, and officers "released both the phone and S.M.'s personal property to him." *Id.* at 4 & n.6.  Defendant offers no insight into how these released items could prove exculpatory to defendant.

At bottom, nothing about this incident suggests fraud, deceit, or lack of veracity.  The fact that Lieutenant Hogans was found "neglectful in his duties as a supervisor" in ensuring that his Unit members followed all the procedures for returning property speaks to the officer's managerial skills but has minimal probative value as to his ability to testify truthfully on the stand.  MPD's investigatory finding concerned supervisory oversight and adherence to administrative procedures, not any determination of dishonest conduct.  *See Glaze*, 861 F.3d at 726 (8th Cir. 2017) (reasoning that officer's violation of institutional policy in passing a cigarette to an inmate lacked probative value under Rule 608 because the conduct "did not involve deceit or fraud").

The balancing analysis under Rule 403 also counsels in favor of exclusion.  "This incident relates to violations of various [MPD] policies.  But, to allow the defendant to question [the officer] about the incident would take the Court on an unnecessary detour, unrelated to the veracity of the witness." *United States v. Jones*, 678 F. Supp. 3d 649, 659 (D. Md. 2023).  Here, the fact that officers on the scene acceded to the request of defendant and S.M. to release property to their companions, while having no bearing on veracity, may distract jurors from the case at hand with a wholly collateral issue about the officers' compliance, or lack thereof, with departmental policy. *See United States v. Beltran-Garcia*, 338 F. App'x 765, 772 (10th Cir. 2009) ("Because the misconduct does not obviously reflect on [the officer's] . . . character for truthfulness, its introduction would more likely require[] extended explanation increasing the risk of jury confusion.").

The government's motion to preclude cross examination of Lieutenant Hogans about Incident #24004446 is thus **GRANTED**.[7]

### C.    EXTRINSIC EVIDENCE

Finally, defendant requests that the Court "allow for the introduction of extrinsic evidence to demonstrate and to show the extent of a witness' bias," "in the event that a witness were to perjure him or herself upon cross-examination regarding prior acts bearing on truthfulness or bias, or that a witness's testimony provides grounds to believe they are intentionally falsifying their testimony as to the events in this case." Def.'s Supp. at 8.

As explained above, although Rule 608(b), in the first line of the text, prohibits the use of extrinsic evidence for the sole purpose of attacking a witness's "character for truthfulness," it does not bar a party from impeaching a witness with extrinsic evidence on other grounds, such as to show bias. *See, e.g.*, *United States v. Haggett*, 438 F.2d 396, 399 (2d. Cir. 1971); *United States v. Lindemann*, 85 F.3d 1232, 1243 (7th Cir. 1996). Here, as conceded by the government, "the category of pending investigations remains a viable source for cross-examination on bias" via extrinsic evidence. Gov't Supp. at 8. The government, however, believes it "unlikely" that a witness will "den[y] knowledge of a pending investigation known to him," and requests that, should this happen, "defendant proffer the extrinsic evidence he seeks to admit so the parties can further be heard." *Id.* Absent indication as to what extrinsic evidence defendant wishes to admit

---

[7]    Defendant's initial opposition to the motion also argued for admission of another sustained finding against Lieutenant Hogans: Incident #23001427, primarily concerning "a failure to ensure an operational plan was in place prior to execution of a search warrant" where the subject of the search warrant committed suicide. Gov't Mot. at 6. Thereafter, however, in supplemental briefing, defendant notes that there appear to be no "allegations or sustained findings regarding Hogans' capacity for truthfulness," and thus "affirms he will not explore this incident during cross-examination." Def.'s Supp. at 8. Defendant is likely correct in his judgment. In addition to having minimal probative value under Rule 608, under Rule 403, the details of this incident "create[] a risk that the jury would [be] improperly prejudiced against the officer for 'his lack of judgment instead of his character for truthfulness.'" *Id.* The resulting suicide, in particular, has the potential to be highly inflammatory. Accordingly, the government's motion to preclude cross examination of Lieutenant Hogans about Incident #23001427 is **GRANTED**.

and with concerns about creating a "trial within a trial," *Moore*, 589 F. Supp. 3d at 93, resolution

of defendant's request is deferred.  Should this issue arise at trial, defendant may raise it again.

## IV.    CONCLUSION

For the reasons above, the government's Motion in *Limine* to Preclude and Limit Cross

Examination of Police Witnesses is granted in part and denied in part.  *See* Gov't's Mot., ECF No.

39.  Specifically, defendant will be allowed to question Officers Minzak, Thomas, and Del Po

about their pending investigations, with questioning limited to (1) the witness's knowledge of the

ongoing investigation; (2) whether the witness believes that he is a subject of the investigation;

and (3) the potential penalty the witness believes he could face as a result of such investigation,

either criminally or related to employment.  Defendant will also be allowed to question Officer

Arnone about Incident #24004446.  Questioning related to the other sustained incidents submitted

in the government's motion, ECF No. 39, is barred.

Date:  February 20, 2026

_____
**BERYL A. HOWELL**
United States District Judge